PLEAU, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 9—April 3, 1951.*

For the plaintiff in error there was a brief by *Martin, Clifford, Warne, Duffy & Dewane* of Green Bay, and oral argument by *Lloyd O. Warne*.

For the defendant in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz*.

FAIRCHILD, J.   There was a jury question to be decided. The testimony given by the defendant must be weighed against the circumstances shown to exist and testimony of witnesses tending to contradict and impeach the testimony given by the defendant. As to the contention that there was not sufficient evidence to sustain the jury's verdict: The argument in the defendant's favor is predicated upon the fact that three lead-lined vats were in a public alley at the rear of the building in which the owner of the vats carried on its business. The defendant in his testimony sought to locate the vats as being on a dump pile which is used for refuse such as cinders, cans, discarded steel, and other odds and ends. From defendant's statement of facts in his brief, we quote the following: "On this particular morning, the de-

fendant had examined the junk pile and picked up small pieces of metal which he threw into his trailer. While doing this, he noticed two wooden vats which were about eight feet long, four feet high, and about three feet wide. These vats were of a wooden construction with heavy planks held together with big flue bolts, and the inside was lined with a black metal substance about one eighth or three sixteenths of an inch in thickness."

The defendant also saw the third vat lying nearer to the building. There is a dispute as to the location of the two vats the lining of which the defendant is charged with having stolen. A Mr. Daugherty had come upon the scene while the defendant was engaged in getting the lining out of the two vats first mentioned. The circumstances then existing indicated to Mr. Daugherty that the defendant was proceeding under a permission to dismantle the vats. When the defendant turned his attention to the third vat, he said to Mr. Daugherty something about the advisability of his stripping the lining from that one, and Mr. Daugherty said to him that he better inquire about the same from the superintendent of the owner. Defendant said he would come back later, and he testified that he asked Mr. Daugherty to inquire of the owner whether he might take that vat also. It becomes significant here to note that Mr. Daugherty then became somewhat concerned over the taking of the lining, although a stranger to the owner. He testified to the taking of the license number of the truck as follows: "These vats had been used by the Wisconsin Electrotype Company who were right in the process of moving to a new location, and it had been placed out there off to one side to enable the Leicht trucks to get in there to take the rest of the equipment, . . . and he asked me about this third vat and I told him he better see Mr. Watke about that one because I knew they were working on it, and as soon as he asked me about that, why, I became suspicious more or less, but previous to that I

figured he had permission; so I got into the car and as I did so I took down the license number and the trailer number and tried to get a description of him. . . ." We have summarized the evidence most favorable to the defendant's claim that he acted without felonious intent. But this testimony, together with other facts appearing and the testimony of other witnesses, left a jury question as to his guilt.

The defendant knew that there was metal of considerable quantity and value in the vats. The jury was warranted in concluding that these vats were not so placed with relation to the junk pile that this in and of itself would warrant defendant's claim that he thought that they had been abandoned. He knew the vats did not belong to him, and the character of the property with its apparent value was such as to indicate that the property was not abandoned as junk. He knew the value of the lining. He knew the owner was near and that a compliance with the law under all the facts made to appear placed upon him the duty to respect the rights of the owner. His subsequent acts as testified to by the individual to whom he sold the lead and the police officers were not consistent with an honest belief that the property had been abandoned, and that he had an unquestioned right to remove the goods from where they had been deposited.

The evidence shows that the so-called dump pile was on private property and was used exclusively by one of the firms occupying the building. It was used as a cinder pile on which were thrown at different times cans and other odds and ends and small bits of refuse. The so-called dump pile was not used by the owner of the two vats. These vats had been placed on the edge of the alley, resting in part on the cinder pile. There was a photograph offered as an exhibit showing the so-called dump pile. The witness Daugherty testified that the remnants of the tank shown in the exhibit were not in the same position at the time of the taking by the defendant; that they had been thrown back a little farther onto the pile.

The owner of the vats intended to salvage the metal lining. To give the exact figures, the amount of lead taken by the defendant was eight hundred thirty-four pounds. The defendant sold this to a junk dealer, refusing at the time to tell the dealer where he had gotten the lead, but saying that he had bought it.

There was an attempt by the defendant to show an intention on his part to restore the lead to its owner. While the evidence here is not too specific, it does appear completely that no attempt was made until after the defendant knew the facts had been discovered and the police notified. Upon the point raised based upon the abandonment of vats by the owner as an excuse for his asportation, it is considered that the evidence is sufficient to sustain the verdict.

The next point urged is in relation to the failure of the court to give a requested instruction. In treating with this matter, we have in mind that the only issue litigated on the trial was whether the accused acted with a felonious intent. Did there exist an actual belief that the vats were junk and abandoned property which he had a right to appropriate? The instructions given to the jury upon the important questions and dealing with the presumption of innocence and reasonable doubt were as favorable to the defendant as the law required. We do not discover that there is a serious complaint about them, and taking the charge as a whole, the jury could not have misunderstood that it was the duty of the state to prove a felonious intent on the part of the defendant at the time of the taking beyond a reasonable doubt. They were instructed that there was a presumption of innocence in the defendant's favor, and that if they could reconcile the evidence on any theory consistent with the defendant's innocence they were bound to acquit him, and that if they had a reasonable doubt whether the defendant believed the property was junk and discarded waste and he acted honestly and in good faith, they could not then find

that he had a felonious intent, and that it was their duty to acquit him. The instruction requested by the defendant did not go further than the instruction given by the court. The requested instruction was not more accurate than the instruction actually given. The learned trial judge carefully protected the interests and rights of the defendant. The effect and significance of the acts and testimony were properly treated. There was evidence properly introduced which affected the credibility of the defendant's testimony and warranted the jury in following the evidence which would logically lead to his conviction.

*By the Court.*—Judgment affirmed.